William B. Brock and Verna Brock, Appellees, v. Myra Pomeroy, Appellant.

Gen. No. 9,529.

Heard in this court at the February term, 1940.  Opinion filed April 26, 1940.

WOOLSEY, STICKNEY & LUCAS, of Galesburg, for appellant.

HARDY, HARDY & WITHERELL, of Galesburg, for appellees.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

On July 16, 1937, William B. Brock and Verna Brock, his wife, filed a suit in the circuit court of Knox county against Myra Pomeroy, the defendant and appellant in this suit. The complaint alleges that the plaintiffs are husband and wife and that on the 16th day of April, 1925, they entered into a contract with one, Benjamin P. Baird for the sale of a certain lot in the town of Abingdon in Knox county, Illinois, for the sum of $2,350. That under the terms of said agreement, the plaintiffs took possession of the property and paid the said Baird the sum of $200, being the down payment, provided in said agreement; that they held and retained possession of said property from the date of said agreement until the 30th day of June, 1937.

The complaint further alleges that on a date unknown to the plaintiffs the said Benjamin P. Baird, for a valuable consideration, sold and assigned all of his right, title and interest in said contract, to Myra Pomeroy and thereafter, on May 23, 1929, the said Myra Pomeroy filed said contract and assignment

thereof, for record in the recorder of deeds' office in Knox county, Illinois; that said contract provided that title to said premises should be shown by a warranty deed showing a merchantable title in the said Benjamin P. Baird; that the plaintiffs are informed, and believe, and state the fact to be, that the said Benjamin P. Baird at the time of the sale and assignment of said contract to said Myra Pomeroy, executed and delivered a deed to said premises, transferring the title to Myra Pomeroy, and that the same was to be delivered to the plaintiffs on the completion of the payments as provided in the contract.

The complaint further alleges that said contract called for the payment by the plaintiffs of $25 per month, and that the plaintiffs made such payments to and including March 6, 1931; that on that date the plaintiffs informed the said Myra Pomeroy, who was the owner of the said contract, that they were unable to pay more than $15 per month on said contract, and that in the event she was unwilling to accept payments of $15 per month, that they would be unable to continue to perform said contract, and be forced to forfeit the premises; that Myra Pomeroy informed the plaintiffs that she would be willing to accept the $15 per month from and after that date, and thereafter the plaintiffs paid to the said Myra Pomeroy the said sum of $15 per month, to and including the 4th of June, 1937, which payments were all accepted by Myra Pomeroy and indorsed on the contract held by the plaintiffs; that on or about May 18, 1937, the plaintiffs discovered that the title to the above premises was not merchantable, either in Benjamin P. Baird, or the defendant, Myra Pomeroy, and that the same was subject to various defects, which rendered the same unmerchantable. (It then stated several defects in the title.) That on June 5, 1937, the plaintiffs tendered to said defendant, Myra Pomeroy, the full amount due on said contract above mentioned; that said defendant refused to accept such tender, and failed and refused to deliver to

the plaintiffs a good and valid warranty deed conveying a merchantable title in and to the premises, and that she persisted in such failure and refusal until the rescission of said contract of the plaintiffs, as hereinafter set forth; that thereafter, on the 30th day of June, 1937, the plaintiffs surrendered possession of the premises to the defendant and delivered up the keys of the same to her; that on July 5, 1937, the plaintiffs delivered to the defendant personally, a notice signed by plaintiffs, notifying the defendant that the plaintiffs had elected to and did thereby rescind the above contract; that the plaintiffs had surrendered possession of the premises and demanded of the defendant in the sum of $3,400.63, being the amount paid by the plaintiffs on said contract, and for taxes, repairs and upkeep on said premises with legal interest, etc. That in addition to the payments made on the contract, the plaintiffs had paid the taxes on the premises from the year 1925, to and including all taxes due and payable to 1937, and paid $400 for repairs and improvements and in excess of $50 as premium for insurance on the premises. They ask an accounting between themselves and the defendant, and that the said Myra Pomeroy be ordered to pay to them the amount of the payments which she had received from them as assignee under the original contract. The copy of the contract was attached as an exhibit to the original complaint, together with the payments indorsed thereon.

The defendant filed her answer in which she admits the making of the original contract between the plaintiffs and Baird, and the assignment thereof to herself. She admits the possession of the premises by the plaintiffs, as stated in their bill of complaint. She denies that she ever consented to the payments being reduced from $25 to $15 per month, or that the plaintiffs had made all of the payments, as set forth in their complaint, or that all of the taxes on the premises had been fully paid. She admits that the plaintiffs tendered to her the balance due on the contract, but says

it was not tendered until after she had declared a forfeiture of the contract, on account of the failure of the plaintiffs to make the payments, as agreed. She denies that the claims filed against the estate of Benjamin P. Baird, deceased, is a cloud upon the title in question. In her answer she states, ''that she had taken possession of the premises after she had forfeited and determined the contract. That after she had exercised her option, she negotiated with William B. Brock all to the end that she would still be willing to deliver him the said warranty deed from the said Benjamin P. Baird and wife to the said William B. Brock and Verna Brock, his wife, conveying all of said premises in question, if he cared to take the same, and pay to her the full amount still due on said contract, at the same time stating to him that she would not do anything with reference to any of his objections to the title, in view of the fact that he had broken the contract by not paying the taxes and for his other defaults.'' She denied that the plaintiffs were entitled to any relief whatsoever.

To this answer the plaintiffs filed a reply in which they deny that the defendant ever forfeited the contract, or ever gave them any notice that they were in default in complying with any of the terms and conditions of the contract, or that she ever made any demand on them that they perform any of the covenants in the contract. They charge that if any defaults occurred, they were all waived by the defendant in that she accepted monthly payments on the contract after it had been assigned to her in 1929. The cause was referred to the master in chancery to take proofs.

Evidence was heard, both for the plaintiffs and the defendant, and the master reported his finding of facts and conclusion of law to the court. To the master's findings the defendant filed numerous objections. The same were overruled and by agreement of the parties, the objections were to stand as exceptions in court. Each side was to furnish the court with written briefs.

The court found the issues in favor of the plaintiffs and rendered a decree in their favor for the sum of $2,565 with interest thereon, at 5 per cent per annum from July 5, 1937. It is from this decree that the appeal is prosecuted.

The appellant insists that the decree of the chancellor is against the manifest weight of the evidence, and that it is not supported by the facts and circumstances as developed therein. The court, in its decree, made a finding of fact which is substantially the same as that of the master in chancery. We have read the evidence in this case and we think it supports the finding of facts both of the court and the master, and is in accordance therewith.

It is next insisted that it was error for the court to proceed, because of a lack of necessary parties, namely, the heirs of Benjamin P. Baird, deceased, who were interested in the result of the suit and necessary parties thereto. We are unable to see why the heirs of Benjamin P. Baird, deceased, were necessary or even proper parties to this litigation. The plaintiffs ask no relief against any one except Mrs. Myra Pomeroy. In order to render one a necessary party to a chancery proceeding, it must appear that such person may be compelled to respond to the prayer of plaintiffs' bill and where there is nothing he is called upon to do, or can be compelled to do as a duty, he is not a necessary party. *Louisville & N. R. Co. v. Illinois Cent. R. Co.,* 174 Ill. 448.

Puterbaugh, in discussing proper parties in a chancery proceeding in his work, Sixth Edition, p. 44, has this to say, ''Where the want of proper parties, or a misjoinder, appears upon the face of the bill, advantage of it may be taken by demurrer or motion to dismiss; where the want of parties does not so appear, a plea or answer setting up the fact is proper. If the objection is not taken until the hearing, the Court may order the case to stand over on terms, with liberty to the complainant to amend, by adding such

new parties as may seem to be necessary; but it cannot be urged at the hearing, unless it is manifest that a decree cannot be made without bringing other parties before the Court. If neither party raises the objection, it is competent for the Court to go on and settle the rights of the parties before it, without prejudice to those who are not parties to the litigation.'' So far as the record discloses, the question of proper parties defendant to the suit was not raised in the trial court.

It is contended by the appellant that the plaintiffs did not properly rescind their contract. The court, in his finding of fact, found that this contract was properly rescinded, and the evidence shows, without any dispute, that the written notice was delivered to Mrs. Pomeroy personally; that the full amount due on the contract was tendered to Mrs. Pomeroy; that the plaintiffs had elected to terminate their contract and also demand the return of the money which they had paid her on the same. We find no merit in this contention.

It is next insisted that the plaintiffs were guilty of laches. The evidence clearly shows that the plaintiffs had no reason to examine the title until a short time before the termination of the contract; that when the Building & Loan Association's attorney made an examination of the title, he informed the plaintiffs that it was not a merchantable title. Their contract provided that at the termination of the contract, when they had fully complied with its terms and made all of their payments, that they were entitled to a warranty deed showing a merchantable title. They had a right to rely upon that, and it was not necessary for them to do anything in regard to the title until they made their final payment, then they were legally entitled to a warranty deed and a merchantable title to the premises.

The defendant claims that she properly forfeited the plaintiffs' rights in the premises prior to the time that they tendered her the $200, and made a demand for

the deed. She states the reason she did so was because they had allowed taxes for 1935, and 1936, to become delinquent and forfeited to the State. The master in chancery and the trial court in their finding of fact, have found against the defendant on this issue of fact, and we think their finding is in accordance with the evidence in the case.

The defendant claims that the court erred in finding, that by her indulgence as to plaintiffs' monthly payments, it is no waiver of default of a different character, and that she never had waived her right under the contract to have the plaintiffs pay the 1935, and 1936 taxes. The evidence clearly shows that the defendant made no complaint about the taxes not being paid promptly. After she claims that she forfeited the contract, she accepted another monthly payment of $15 on the same. At the time that the plaintiffs tendered the $200, the balance due on the contract, all of the back taxes had been fully paid, so there was no reason for the defendant at that time to say that she had been damaged in any way by the nonpayment of the 1935, and 1936 taxes. At the time the plaintiffs tendered the money and made the demand for the deed, the only thing that was needed to consummate the contract, was to furnish the warranty deed and to show a merchantable title. This, the defendant failed to do.

We are not impressed with appellant's argument that the plaintiffs are not fit candidates for relief from a chancellor, and the equitable attitude of Myra Pomeroy. The trial court and this court must decide the case on the law and evidence as produced in the trial court. The contract provided that upon certain conditions, the plaintiffs were entitled to a warranty deed showing a merchantable title. We think the evidence discloses that the title, as tendered to the plaintiffs, was not a merchantable title, but if they had accepted the deed with the title being questionable as it is, that they would not have the kind of a title that they con-

tracted to pay for when they entered into the contract of sale. The plaintiffs had paid their money to Mrs. Pomeroy for something that she, as assignee of the original grantor, was unable to deliver, as provided in the contract. It is our conclusion that the court properly found that the plaintiffs were entitled to recover the amount they paid to Mrs. Pomeroy on this contract, together with 5 per cent interest from the date that they rescinded the contract. The decree of the trial court will be affirmed.

*Affirmed.*