John F. Westrom v. Commissioner. Oscar Suneson and Violet Suneson v. Commissioner.
Westrom v. Commissioner
Docket Nos. 2359-64, 2360-64.
United States Tax Court
T.C. Memo 1966-198; 1966 Tax Ct. Memo LEXIS 85; 25 T.C.M. (CCH) 1019; T.C.M. (RIA) 66198; September 12, 1966
Walter J. Lynwood, 1921 N. Harlem, Chicago, Ill., for the petitioners. James E. Caldwell, for the respondent. WITHEY
Memorandum Opinion WITHEY, Judge: The respondent determined deficiencies in petitioners' income tax for the year 1961 in the following amounts: Petitioner
Docket No.
Deficiency
John F. Westrom
2359-64
$1,192.01
Oscar Suneson and Violet
Suneson
2360-64
1,004.52 The cases have been consolidated and will be decided together. The sole issue is whether the gain arising from the sale of petitioners' apartment house was realized in 1960 or 1961. All of the facts have been stipulated and are so found. Petitioner John F. Westrom filed his individual income tax returns for the years 1960 and 1961 with the district director at Chicago, Illinois. *86 Petitioners Oscar and Violet Suneson, husband and wife, filed joint income tax returns for the years 1960 and 1961 with the district director at Chicago, Illinois. During the years 1960 and 1961, petitioners John F. Westrom and Oscar Suneson were members of a partnership known as Suneson Company located in Chicago, Illinois. The partnership was principally involved in the construction business and, in 1960, it owned an apartment building in Des Plaines, Illinois. On September 12, 1960, Jerome, Albert, and Milton Lerner, as purchasers, signed a real estate contract for the purchase of petitioners' apartment building. The sales contract provided for a total purchase price of $105,000 to be paid as follows: 1. $5,000 in earnest money to be deposited by the purchasers with the sellers contemporaneously with the signing of the contract. 2. $30,000 in cash to be paid by the purchasers when they received the deed of conveyance to the property. 3. Purchasers were to assume a $60,000 "more or less" first mortgage and sellers were to take back a $10,000 "part purchase money" second mortgage which latter mortgage was due on or before 2 years from the closing of the transaction. Under *87 the terms of the contract, payment of the following items were to be prorated at the time of settlement: 1. Interest on encumbrances 2. Insurance premiums 3. Current general taxes 4. Electric light and gas 5. Water taxes 6. Rents 7. Janitor 8. Any other usual items The agreement further provided that the seller was to furnish within 6 months "A Torrens Certificate accompanied by a Torrens Title Tax Search." Under the heading "GENERAL AGREEMENTS" the contract provided that: The Buyer herein agrees to buy said property at the price stated, and on the terms and subject only to the liens and encumbrances herein stated, and the seller agrees to sell and convey the same as aforesaid by Trustee Stamped Warranty Deed, including the Release and Waiver of the Right of Homestead and Dower. When the said title papers have been furnished the buyer shall close the deal within ten days if the title is merchantable, and if the title is not merchantable the buyer may, at his option, rescind this contract and have the earnest money refunded, whereupon this contract shall become null and void. But if the buyer defaults in this contract, the earnest money is at the option of the seller *88 to be forfeited, as liquidated damages, first paying the real estate broker's commission and expenses incurred, and rendering the balance to the seller, and the contract shall become null and void. If a report of title is furnished as aforesaid, the seller shall, within fifteen days after the deal is closed, furnish a Guarantee Policy in the usual form for the full amount of the purchase price. Notices may be served on either party by mail at their said addresses and no tender of deed or purchase money shall be necessary, but a failure to appear upon notice to close the deal at the place mentioned in this contract shall be a default. All pro-rating shall be as of date of closing of deal and time is of the essence of this contract. And the seller may remove any objections to the title at the time of closing the deal if the same can be done at such time. The closing paragraph of the contract read as follows: This deal is to be closed on or before six (6) months from date hereof, at option of buyers, as to closing date. In the event this deal is not closed by January 1, 1961, then the buyers agree to deposit with sellers an additional $5,000.00 earnest money * * * The real estate *89 transaction contemplated by the contract dated September 12, 1960, was not closed by January 1, 1961. However, on February 28, 1961, a date prior to the expiration of the 6-month period referred to in the original contract for closing of the sale, the parties executed a second contract for the purchase of the apartment building. The provisions of this contract were identical to those in the initial agreement except that the second contract recited payment of $10,000 earnest money instead of $5,000. This earnest money deposit consisted of the $5,000 received by petitioners under the initial contract and an additional $5,000 paid by check dated March 3, 1961. The second contract further provided that settlement was to occur no later than December 1, 1961. Sale of the apartment was not closed until December 18, 1961. On that date, the deed of conveyance was transferred to the purchasers, it was registered in the office of Register of Titles, Cook County, Illinois, and the purchasers went into possession of the property. In its partnership return of income for the taxable year 1960, the Suneson Company reported a net profit of $5,281.85 from the sale of the apartment building. The *90 partnership reported this profit under the installment method as follows: Gross
sales
Cost
price
(basis)
Sale of building
$105,000
$81,231.67
Installment method: Contract price
$45,000.00
Gross profit
23,768.23
$10,000 received in
1960 *
Profit ratio
52.8185
Net gain
5,281.85
For the taxable year 1961, the Suneson Company did not report income from the sale of the apartment on the installment method but recomputed profit from the sale and reported that portion of net profit not reported in its 1960 return in the following manner: Sale of Building
Sales price
$105,000.00
Cost
97,026.41
Profit
7,973.59
Profit reported on collections in
1960
5,281.85
Profit reportable in 1961
2,691.74 In recomputing profit on its 1961 return, petitioners increased the cost basis of the property from $81,231.67 (as reported on the 1960 partnership return) to $97,026.41 in order to reflect the corrected land cost of $10,000 and additional building expenses incurred *91 in 1961. On their respective income tax returns for 1960, petitioner Westrom and petitioners Oscar and Violet Suneson reported as income from their partnership the sum of $3,899.60, or 50 percent of the distributable net income of the Suneson Company, which sum included the amount of $5,281.85 reported by the company as profit realized from the sale of the apartment building pursuant to the contract dated September 12, 1960. On their respective tax returns for 1961, petitioner Westrom and petitioners Oscar and Violet Suneson reported as income from their partnership the sum of $8,962.17, or 50 percent of the distributable net income of the Suneson Company, which sum included the amount of $2,691.74 reported by the company as profit realized from the sale of the apartment building but not reported on the partnership's 1960 return. Under section 453(a) and (b) of the Internal Revenue Code of 1954 a taxpayer is permitted to report income from a sale or other disposition of real property on the installment method provided the payments received in the year of the sale do not exceed 30 percent *92 of the selling price. [1] Petitioners contend that the real estate contract they entered into in 1960 was "unconditional, binding and irrevocable" and its execution, together with receipt of $5,000 earnest money from the purchasers, constituted a closed transaction in 1960 for tax purposes. Respondent, on the other hand, contends that the sale was not consummated, and the transaction therefore not closed for tax purposes until 1961, when legal title and possession were transferred to the purchasers. *93 There is no dispute as to the essential facts. By a real estate sales contract dated September 12, 1960, petitioners agreed to sell their apartment building for $105,000. The contract provided for a $5,000 earnest money deposit at the time of signing and an additional $30,000 in cash at the time of settlement. Although the contract called for settlement within 6 months, i.e., by March 12, 1961, a new contract substantially the same as the initial one was signed on February 28, 1961, extending the time for closing the transaction to December 1, 1961. Settlement occurred on December 18, 1961, at which time the deed of conveyance as well as possession of the property was transferred to the purchasers. The sole issue to be decided is in which of two years, 1960 or 1961, did the sale of petitioners' real estate become a closed transaction for tax purposes. If in 1960, when the sales contract was signed and $5,000 earnest money received, petitioners must prevail; if in 1961, when the purchasers paid the balance of the cash down payment, $25,000, and received title and possession, respondent will prevail. Under the contract dated September 12, 1960, it was agreed that when petitioners *94 furnished title papers to the purchasers, the purchasers were to close the deal within 10 days provided the title was merchantable. The contract further provided that if any objection to the title arose, the seller was permitted to remove it up to the time of settlement, if such was possible. In leaving something to be done by each party, i.e., tender of merchantable title by petitioners and payment of a substantial amount of cash by the purchasers, the contract was executory in nature, Farrington v. Tennessee, 95 U.S. 679, 683 (1877). In our view the contract in controversy constitutes an option agreement for the sale and purchase of real estate. In Number Nine Plantation, 23 B.T.A. 974 (1931), a case involving the question of the correct year of sale, a sales contract was entered into on July 17, 1925. The purchaser gave the seller $10,000 upon execution of the contract, $38,000 on September 29, 1925, and the balance of the cash required under the contract, $27,000, on October 14, 1925. On the latter date the seller delivered an abstract of title as well as an *95 executed deed to the purchaser pursuant to the contract provision requiring delivery of the deed upon payment of $65,000. No right of ownership or possession was given by the seller to the purchaser until the execution of the deed on October 14, 1925, and the purchaser did not take actual possession of the property before that date. Inasmuch as the seller kept books on a fiscal year ending September 30, the question was whether the sale was consummated in fiscal 1925 or fiscal 1926. In holding that the sale occurred in fiscal 1926, we stated the following at page 977: The contract of sale quoted in our findings indicates, upon its face, that the actual sale and conveyance was to be made in the future. One indication of this intention is the statement that all taxes and insurance payments upon the property are to be prorated as of the date of the delivery of the deed, that the vendor shall pay all prior taxes and insurance, and that the vendee shall assume and pay all taxes and insurance thereafter due. * * * Continuing our analysis at page 978, we further held: that the $10,000 payment made at the time of the execution of the contract was merely the consideration for the execution *96 of that contract, although if the contract were carried out it was to apply on the purchase price. If it were not carried out, it was to be forfeited together with any other payments as liquidated damages. The agreement also provided that the time for making the payment set out in the contract was to be considered an essential part of the agreement. This would indicate that the parties did not intend that there was an actual sale until the provisions of the agreement had been met. It may well have been that when the vendee received the abstract of title which was to be furnished before he was obligated to make payments, he might have discovered that the vendor did not have title to convey and clearly it was not intended that the sale was consummated until he had an opportunity to examine the abstract. This consideration was clearly a condition precedent to the consummation of the sale and this fact in connection with the other facts and conditions contained in the agreement indicate that there was not an unconditional liability of the vendee for the purchase price in the fiscal year 1925. The vendor was in no position to demand the $65,000 payment in that fiscal year, because it had *97 not complied with its agreement. The vendor, not having furnished the abstract and other papers required to effect the transfer, had made no tender of title or possession, and the vendee, having received none and being in no position at that time to demand title or possession, we do not consider that the sale was made until those conditions had been met. The taxpayer did not offer possession or right of possession and the vendee exercised no right of possession until that time. * * * Because of the factual similarity existing between the instant case and Number Nine Plantation we think the rationale relied upon in that case is equally persuasive here. In both cases, taxes and insurance payments were prorated as of the settlement date; the respective contracts provided that time was of the essence; the seller's right to the purchase price and the closing of the sale were dependent upon the seller furnishing good title to the property; and no right of ownership or possession was tendered to the purchaser until the time of settlement. Petitioners' acceptance of the $5,000 earnest money in 1960 was conditional and subject to refund if there was an adverse finding as to title. Garionis v. Mickevice, 298 Ill. App. 458, 19 N.E. 2d 108 (1939); *98 Brock v. Pomeroy, 305 Ill. App. 127, 27 N.E. 2d 56 (1940); Number Nine Plantation, supra; Louis M. Bourne, 23 B.T.A. 1288, 1293 (1931), affd. 62 F. 2d 648 (C.A. 4, 1933), certiorari denied 290 U.S. 650 (1933). Since the facts fail to show that merchantable title was tendered by petitioners in 1960, they did not obtain the unconditional right to retain the earnest money in that year. We find the $5,000 payment received by the partnership in 1960 was a mere contingent deposit which did not constitute income to petitioners until 1961, when the sale was consummated. Daniel Rosenthal, 32 T.C. 225, 229 (1959). We think the conclusion reached herein is further supported by the case of Lucas v. North Texas Co. 281 U.S. 11 (1930), affirming 7 B.T.A. 1193 (1927). In that case a 10-day option to purchase timber lands was given to a solvent offeree on December 27, 1916. On the same day the option holder found the title satisfactory and on December 30, 1916, arranged for the money needed, gave notice that it was exercising the option and declared itself ready to close the transaction *99 and pay the purchase price "as soon as the papers were prepared." The offeror immediately ceased its sawmill operations and withdrew all its employees. Since the option set forth the terms of the sale, nothing remained to be done except execution of the papers and payment of the purchase of the papers and payment of the purchase price. On January 5, 1917, the property was conveyed and the purchase price paid. The seller, an accrual basis taxpayer, reported gain from the transaction on its tax return for 1916. In holding that the sale in question occurred in 1917, the Supreme Court stated the following, at pages 13-14: An executory contract of sale was created by the option and notice, December 30, 1916. In the notice the purchaser declared itself ready to close the transaction and pay the purchase price "as soon as the papers were prepared." Respondent did not prepare the papers necessary to effect the transfer or make tender of title or possession or demand the purchase price in 1916. The title and right of possession remained in it until the transaction was closed. Consequently unconditional liability of vendee for the purchase price was not created in that year. * * * The entry *100 of the purchase price in respondent's accounts as income in that year was not warranted. Respondent was not entitled to make return or have the tax computed on that basis, as clearly it did not reflect 1916 income. On the foregoing authorities, we hold that the $5,000 earnest money received by petitioners in 1960 did not constitute income to them until the consummation of the sale in 1961. Therefore they could not elect to report that amount under the installment method in 1960. Neither could they properly report that amount on the installment method in 1961 since, as petitioners concede, the partnership's total receipts from the sale exceeded 30 percent in that year. Decisions will be entered for the respondent. Footnotes
*. Although the amount received by petitioners in 1960 was $5,000, and not $10,000 as stated, this error does not affect the disposition of the case.↩
1. SEC. 453. INSTALLMENT METHOD. (a) Dealers in Personal Property. - Under regulations prescribed by the Secretary or his delegate, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price. (b) Sales of Realty and Casual Sales of Personalty. - (1) General Rule. - Income from - (A) a sale or other disposition of real property * * *
may (under regulations prescribed by the Secretary or his delegate) be returned on the basis and in the manner prescribed in subsection (a). (2) Limitation. - Paragraph (1) shall apply - (A) In the case of a sale or other disposition during a taxable year beginning after December 31, 1953 (whether or not such taxable year ends after [August 16, 1954] the date of enactment of this title), only if in the taxable year of the sale or other disposition - * * *
(ii) the payments (exclusive of evidences of indebtedness of the purchaser) do not exceed 30 percent of the selling price.↩